**KAREN M. VICKERS,** OSB No. 913810
kvickers@vickersplass.com
Telephone: 503-726-5985
**BETH F. PLASS,** OSB No. 122031
bplass@vickersplass.com
Telephone: 503-726-5975
VICKERS PLASS LLC
5200 SW Meadows Road, Suite 150
Lake Oswego, OR 97035

Of Attorneys for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **TESSA BULZAN,**<br><br>Plaintiff,<br>v.<br>**HILLSBORO SCHOOL DISTRICT; HILLSBORO SCHOOL DISTRICT'S BOARD OF EDUCATION,**<br>Defendants. | Case No. 3:26-cv-1965-AR<br><br>DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S PRELIMINARY INJUNCTION |

Defendants Hillsboro School District and Hillsboro School District Board of Education ("District") respectfully submit this response in opposition to plaintiff's motion for a preliminary injunction.

## INTRODUCTION

Plaintiff Tessa Bulzan is the parent of two students enrolled in the District's public schools. She challenges the District's denial of reimbursement for certain religious curriculum materials and seeks a preliminary injunction requiring the District to reimburse those expenses. Her claims arise, primarily, under the First Amendment's Free Exercise Clause. The motion should be denied because the Constitution does not require a public school district to fund

religious instruction as part of its own educational program.

## STANDARDS

A preliminary injunction is an "extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 24 (2008). In deciding whether to grant that relief, courts balance the competing claims of injury and consider the effect of granting or denying the injunction on each party. A party seeking a preliminary injunction must demonstrate that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Id.* at 20. A plaintiff must establish all four elements before a court may grant preliminary relief. *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1135 (9th Cir. 2011) (finding that, in light of *Winter*, no balancing of factors is permissible absent a showing of irreparable harm). Thus, regardless of the strength of the other elements, a failure to establish any one element required by *Winter* precludes preliminary relief. The injunction "should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997) (emphasis in original).

Where, as here, the moving party asks the Court to compel the opposing party to act by granting a reimbursement, the standard is higher. Mandatory injunctions are "particularly disfavored," and should not be granted "unless the facts and law clearly favor the moving party." *Garcia v. Google, Inc.,* 786 F.3d 733, 740 (9th Cir. 2015) (internal citations omitted).

//

//



VICKERS PLASS LLC
5200 SW MEADOWS ROAD, SUITE 150
LAKE OSWEGO, OREGON 97035
(503) 726-5985| (503) 726-5975

## BACKGROUND

### I. Background

Public education in Oregon is administered through local school districts operating within a statewide system governed by statutes enacted by the Oregon Legislature and rules adopted by the State Board of Education. *See* ORS 329.045; ORS 332.072, .075. School districts must comply with applicable state requirements governing instruction, student attendance, educational standards, and the provision of educational services. *See* OAR 581-022-0102; OAR 581-022-2030.

The Hillsboro School District is a public school district that serves nearly 18,000 students. Declaration of Audrea Neville ("Neville decl.") ¶ 3. The District operates Hillsboro Online Academy, a public, diploma-granting school that offers online educational options to students in kindergarten through grade 12. *Id.* The District's Homeschool Partnership Program is housed within Hillsboro Online Academy and serves families with students in kindergarten through grade 8. *Id.* at ¶ 4.

The Homeschool Partnership Program provides participating families with access to District personnel, educational resources, academic support, testing, student services, optional classes and activities, and reimbursement for approved curriculum and educational expenses. Neville decl. ¶ 4. The curriculum reimbursement is $2,000 per student per year, plus a $300 tech stipend per student every four years. *Id.*

Students enrolled in the Homeschool Partnership Program are officially enrolled District students and need not separately register with their local education service district as homeschooled students. Neville decl. at ¶ 5. These students are therefore public-school students



VICKERS PLASS LLC
5200 SW MEADOWS ROAD, SUITE 150
LAKE OSWEGO, OREGON 97035
(503) 726-5985| (503) 726-5975

under Oregon law. *Or. Dep't. of Educ., Remote & Online Learning Policy FAQ, 4 and 5* (last visited Oct. 30, 2026, https://www.oregon.gov/ode/learning-options/Documents/Remote_Online_Learning_Policy_FAQ.pdf . Their instruction must be provided under the direction and supervision of appropriately licensed personnel and must comply with applicable instructional-time requirements. *See* OAR 581-022-0102(34)(a); OAR 581-022-2400(1).

## II. Plaintiff's Interactions with the Homeschool Partnership Program

Plaintiff[1] enrolled two of her children as District students in the Homeschool Partnership Program during the 2025/2026 school year. Neville decl. ¶ 6. The family attended an orientation for the program in August 2025. *Id.* During the orientation, the District explained that religious curriculum materials are not reimbursable. *Id.* at ¶ 6 & Ex. 1.

In January 2026, District staff advised plaintiff that it was denying certain reimbursement requests based on guidance from the Oregon Department of Education. Neville decl. ¶ 7 & Ex. 2. On January 26, 2026, plaintiff submitted a formal complaint to Hillsboro Online Academy Principal Shannon Lawson. After consulting the Oregon Department of Education, Lawson denied the complaint. Neville decl. ¶ 8 & Ex. 3. Several days later, Assistant Superintendent for Instruction Audrea Neville separately contacted the Department, which confirmed that Oregon law and the Oregon Constitution required denial of the reimbursement. Neville decl. ¶ 9 & Ex. 4. Plaintiff appealed Lawson's decision to Neville, who denied the appeal. *Id.* at ¶ 10. Plaintiff then pursued a Step 3 appeal, and the denial was affirmed. *Id.* at ¶ 11 and Ex. 5.

---

[1] Plaintiff's emails to the District come from an email account under the name Tessa Moss.



VICKERS PLASS LLC
5200 SW MEADOWS ROAD, SUITE 150
LAKE OSWEGO, OREGON 97035
(503) 726-5985| (503) 726-5975

Although the District could not reimburse plaintiff for religious materials, staff worked with the family to reimburse other allowable items so that plaintiff's children received nearly the full available reimbursement. For the 2025/2026 year, one child was eligible for $2,300 in reimbursements and received $2,252.30; the other was eligible for $2,000 and received $1,926.64. Neville decl. ¶ 12 & Ex. 6.

The Hillsboro Homeschool Partnership permits reimbursement for curriculum in math, ELA/writing, science, and social studies. Neville decl. ¶ 13. When a parent requests reimbursement for curriculum that has not previously been submitted and approved, District staff use a rubric to determine whether the material meets Oregon standards. Neville decl. ¶ 13 & Ex. 7. Staff did not perform that review in this situation because the materials were ineligible for reimbursement on religious-content grounds. *Id.*

Throughout this process, the District sought to accommodate plaintiff while complying with Oregon Department of Education directives grounded in Oregon law. Neville decl. ¶ 14. Plaintiff's children are enrolled in the program again this year. The District has no plans to remove plaintiff's children from the program, even though the family has not signed the program agreement. *Id.* at ¶ 15.

## ARGUMENT

### I. Plaintiff has not established likelihood of success on the merits of her claims against the District.

#### a. Plaintiff cannot establish that the District is liable because the District is applying a state mandate.

The defendants are the Hillsboro School District and the Hillsboro School District Board.



VICKERS PLASS LLC
5200 SW MEADOWS ROAD, SUITE 150
LAKE OSWEGO, OREGON 97035
(503) 726-5985| (503) 726-5975

To impose liability on a municipal entity under Section 1983, a plaintiff must identify an act of the entity itself – rather than an act of one of its employees – that caused the alleged deprivation of federal rights. *See Monell v. New York City Department of Social Services,* 436 U.S. 658 (1978). The word "policy" generally implies "a course of action consciously chosen from among various alternatives[.]" *Oklahoma City v. Tuttle,* 471 U.S. 808, 823 (1985). When municipal employees act under the command of state law, their conduct does not result from a policy choice by the municipal entity. In that circumstance, state law – not municipal policy – is the cause of the challenged conduct. Under either rationale – the absence of a municipal policy or the absence of municipal causation – the entity cannot be liable. *See, e.g., Snyder v. King,* 745 F.3d 242, 247 (7th Cir. 2014) (a municipal entity "cannot be held liable under Section 1983 for acts that it did under the command of state or federal law"); *Juzumas v. Nassau County,* 33 F.4th 681, 688–89 (2d Cir. 2022) (declining to hold a municipality liable for enforcing state law).

Here, the District has not reimbursed plaintiff for religious materials because Oregon law explicitly prohibits the District from doing so. *See* Or. Const. art. I, § 5; *see also* ORS 338.115(4). That compliance is not a discretionary administrative choice: Oregon law provides that a school district engaging in such prohibited financial support shall lose its state funding. *See* ORS 327.109(2)(a)(B). When plaintiff raised the reimbursement issue, the District repeatedly consulted the Oregon Department of Education, which directed the District to deny reimbursement based on Oregon law. Under these circumstances, plaintiff cannot establish that the District is liable under *Monell* for the alleged violations. *See Wilkins v. Herron, et al.,* 2024 WL 5200177, at *2 (9th Cir. Dec. 23, 2024) (contrasting fact scenario with *Evers v. Custer Cnty.,* 745 F.2d 1196 (9th Cir. 1984) and holding that an Oregon public school district was not liable



VICKERS PLASS LLC
5200 SW MEADOWS ROAD, SUITE 150
LAKE OSWEGO, OREGON 97035
(503) 726-5985| (503) 726-5975

under *Monell* for enforcing a state vaccine mandate).

**b. Free Exercise: The Free Exercise Clause does not require a public school to purchase religious curriculum for a public-school program.**

Plaintiff cannot establish likelihood of success on the merits of her Free Exercise claim because the Constitution permits a public school district to provide a secular public education without incorporating religious instruction into its programming. Plaintiff's Free Exercise claim is based on *Trinity Lutheran Church of Columbia, Inc. v. Comer,* 582 U.S. 449 (2017), *Espinoza v. Montana Department of Revenue,* 591 U.S. 464 (2020), and *Carson v. Makin,* 596 U.S. 767 (2022). Motion at 2. Those cases hold that the government cannot deny an otherwise available public benefit because of a recipient's religious character or religious exercise, but they do not require the government to fund religious instruction as part of the government's own public-school education program. As *Carson* recognized a State "need not subsidize private schools," and it can "provide a strictly secular education in its public schools." 596 U.S. at 785-86. The relevant question is whether the challenged funding is a benefit offered to parents for private educational choice or resources provided as part of a public-school district's education program. The program here is the latter.

*Woolard v. Thurmond,* 170 F.4th 701 (9th Cir. 2026), a recent decision applying *Carson,* supplies the framework for answering that question and demonstrates why plaintiff's Free Exercise claim fails. In *Woolard,* parents whose children participated in independent-study programs at California charter schools sought to use public funds for religious instructional materials for use at home. *Id.* at 706. The Ninth Circuit rejected their Free Exercise claims, holding that the programs were public-school programs for which the State could require a



VICKERS PLASS LLC
5200 SW MEADOWS ROAD, SUITE 150
LAKE OSWEGO, OREGON 97035
(503) 726-5985| (503) 726-5975

secular curriculum.

In reaching that conclusion, the *Woolard* court examined the features *Carson* identified as distinguishing public schools, where secular instruction is prohibited, from private schools, including that public schools are free and open to all, must comply with extensive state curricular and assessment requirements, and must be staffed and supervised by state-certified teachers. *Woolard,* 170 F.4th at 707-10 (citing *Carson,* 596 U.S. at 782–84). Applying those features, the *Woolard* court held that independent-study programs remained public-school programs even though parents taught at home, selected preexisting curriculum, and enjoyed "great flexibility." *Id.* The court explained that "with that flexibility comes substantial legal constraints not applicable to private schools," including supervision by state employees, and concluded that "[t]he extensive legal requirements applicable to the defendant charter schools' independent study programs make them public school programs and defeat Plaintiffs' free exercise claim." *Id.* at 710. The Ninth Circuit specifically considered and rejected some of the same arguments plaintiff advances here: that the program constituted homeschooling, that parents were the direct educators, and that parents selected the curriculum.

Here, the District's Homeschool Partnership Program has many of the features that *Carson* identified and *Woolard* held, characterize a public-school program. First, the Homeschool Partnership Program operates within Hillsboro Online Academy, a public school, and is administered by the District. It is not a grant program through which parents receive unrestricted funds. Plaintiff's submissions confirm that the District operates the program through a principal, an assistant superintendent, and a program administrator, and that the program is subject to the District's complaint procedures and Board oversight. The



VICKERS PLASS LLC
5200 SW MEADOWS ROAD, SUITE 150
LAKE OSWEGO, OREGON 97035
(503) 726-5985| (503) 726-5975

reimbursement decisions therefore concern the use of public educational resources within a District program.

Second, the Homeschool Partnership Program imposes substantive educational requirements. The District's materials advise families that reimbursable materials must align with Oregon academic standards. *See* Complaint ¶ 141. That requirement reflects the District's responsibility to ensure that program expenditures advance the educational objectives established for the public program. A program that screens purchases for alignment with state content standards is not simply writing a check to fund a parent's private educational choice.

Third, the Homeschool Partnership Program supervises instruction through work-sample review and oversight by District staff, who must be licensed public educators. Students attending the Homeschool Partnership Program are officially enrolled District students who are subject to Oregon's attendance laws, including the requirement that they be dropped from attendance after 10 consecutive days of non-attendance. Families accordingly must report their teaching days. Families also submit quarterly work samples that District staff review. Finally, students are required to take assessments (unless they opt out, like all Oregon public-school students are permitted to do). *Woolard* involved a similar structure of parent-led instruction under school oversight and found it to be public school supervision. 170 F.4th at 709-710.

Fourth, the Homeschool Partnership is free and open to the District's K-8 families, and the allowance is funded with public school dollars. The funds at issue are the District's own resources for the instruction provided under its oversight, which the school makes available through reimbursement, and not a grant that a parent takes to a private institution or a voucher redeemable at any school the parent selects as was the case in *Carson*.



VICKERS PLASS LLC
5200 SW MEADOWS ROAD, SUITE 150
LAKE OSWEGO, OREGON 97035
(503) 726-5985| (503) 726-5975

Plaintiff's further Free Exercise arguments do not add to the analysis. In *Mahmoud v. Taylor,* 606 U.S. 522 (2025), a school board refused to allow opt outs during classroom instruction that conflicted with their parents' religious teaching. And in *Wisconsin v. Yoder,* 406 U.S. 205 (1972), the State compelled school attendance beyond the eighth grade under threat of criminal penalty. Here, the District compels nothing. All the District is doing is declining to pay for religious instruction in its own program. Nothing in *Mahmoud* suggests that parents have a Free Exercise right to have a public school fund the religious instruction they provide at home.

Likewise, the District's rule is neutral and generally applicable. The District's rule applies categorically to religious curriculum of every faith and is not a mechanism for individualized exemptions. The "case-by-case" review that plaintiff cites, Motion at 25, concerns whether materials meet Oregon academic standards under a rubric, not whether to grant exceptions to the prohibition on religious content. *See* Neville decl. Ex. 7.

Plaintiff has not shown likelihood of success on the merits of her Free Exercise claim.

**c. Parental Rights: The Due Process clause does not require a public school district to fund parents' private educational decisions.**

Plaintiff cannot establish a likelihood of success on the merits of her Due Process parental-rights claim because courts have repeatedly rejected attempts to use the Fourteenth Amendment to compel public funding of a parent's preferred educational content. The Due Process Clause protects "the liberty of parents and guardians to direct the upbringing and education of children under their control." *Pierce v. Society of Sisters,* 268 U.S. 510, 534–35 (1925); *Meyer v. Nebraska,* 262 U.S. 390, 399–401 (1923). That liberty includes the freedom to educate children at home using religious materials. The District has not interfered with that



VICKERS PLASS LLC
5200 SW MEADOWS ROAD, SUITE 150
LAKE OSWEGO, OREGON 97035
(503) 726-5985| (503) 726-5975

freedom. Plaintiff does not allege that the District prohibited her from homeschooling, using religious curriculum, or teaching her faith.

What plaintiff asserts here is a right to have a public school pay for the curriculum she prefers. Neither *Meyer* nor *Pierce* establish such a right. The Supreme Court has repeatedly held that the right to make a private educational choice does not entail the right to have the government fund it. *See, e.g., Norwood v. Harrison,* 413 U.S. 455, 462 (1973).

Plaintiff attempts to avoid these authorities by characterizing the reimbursement denial as a "financial penalty." The cases on which she relies, *Harman v. Forssenius,* 380 U.S. 528 (1965) (poll tax), and *Dunn v. Blumstein,* 405 U.S. 330 (1972) (voter residency duration rules), involved conditions that directly burdened the exercise of constitutional rights. Likewise *Koontz v. St. Johns River Water Management District,* 570 U.S. 595, 604–08 (2013), cited by plaintiff, does not create a substantive right to public funding whenever a constitutionally protected choice has a financial consequence. The unconstitutional-conditions doctrine addressed in *Harman, Dunn,* and *Koontz* serves to prevent the government from coercing individuals to surrender rights they already possess. The doctrine does not expand those rights to include an entitlement to public subsidies. *See Norwood,* 413 U.S. at 462–63.

To establish a parental rights claim, plaintiff must show more than the fact that she bears the expense of exercising her rights. She must show that the challenged policy impermissibly burdens her constitutional authority to direct her children's education. The parental-rights cases do not establish that denying a reimbursement, as the District has done here, burdens her parental rights.



VICKERS PLASS LLC
5200 SW MEADOWS ROAD, SUITE 150
LAKE OSWEGO, OREGON 97035
(503) 726-5985| (503) 726-5975

**d. Viewpoint Discrimination: The District's decision to fund its own educational program as it sees fit is not viewpoint discrimination.**

Plaintiff is unlikely to succeed on the merits of her Free Speech claim. The claim fails for the same reason the viewpoint discrimination claim failed in *Woolard*. 170 F.4th at 710. There, the parents argued that their curriculum choices were private speech and that the public school's refusal to fund the selected materials constituted viewpoint discrimination. *Id.* The Ninth Circuit held that "a public school's curriculum is an 'expression of its policy,'" that curricular decisions are government speech, and that government speech is not subject to Free Speech Clause scrutiny. *Id.* The court in *Woolard* also rejected the parents' Free Speech argument based on *Rosenberger v. Rector & Visitors of Univ. of Va.,* 515 U.S. 819 (1995), noting that *Rosenberger* itself recognized that "[w]hen the University determines the content of the education it provides, it is the University speaking." *Woolard,* 170 F.4th at 710 (citing *Rosenberger,* 515 U.S. at 833).

Plaintiff's restraint theory, Motion at 29, is likewise meritless. She cites *Sorrell v. IMS Health, Inc.,*564 U.S. 552 (2011) for the proposition that the District restrains the way she speaks, but *Sorrell* involved a law restricting the sale of pharmacy records, which is protected speech. Here, plaintiff identifies no similar restriction on her own speech. She teaches what she chooses, in her home, she is just not reimbursed for doing so. Finally, because the reimbursement program is government speech, the forum analysis under *Rosenberger* and *Perry Education Association* does not apply. Even if it did, as demonstrated in section I. b. *supra,* plaintiff has not shown the allowance is a forum for private speech rather than a subsidy for the school's own educational program.


VICKERS PLASS LLC
5200 SW MEADOWS ROAD, SUITE 150
LAKE OSWEGO, OREGON 97035
(503) 726-5985| (503) 726-5975

**II. Plaintiff has not established irreparable harm.**

Preliminary relief cannot be entered in the absence of evidence of an irreparable injury. *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1198 (9th Cir. 1980) (abuse of discretion for district court to enter an injunction without a showing of irreparable harm). The District acknowledges that a plaintiff who demonstrates a likelihood of success on the merits of a First Amendment claim establishes irreparable injury. *Youth 71Five Ministries v. Williams,* 160 F.4th 964, 977 (9th Cir. 2025). Because plaintiff is unlikely to succeed here, the presumption is not triggered, and she must independently show that irreparable harm is likely, not merely possible. *Winter,* 555 U.S. at 22.

Plaintiff challenges reimbursement decisions involving up to $2,000 per student. A specifically quantified reimbursement is a purely economic injury. Because such an injury can be remedied through a post-judgment monetary award, it does not constitute irreparable harm. *Los Angeles Memorial Coliseum Comm'n v. National Football League,* 634 F.2d 1197, 1202 (9th Cir. 1980).

**III. The balance of equities and the public interest do not favor an injunction.**

When the government is a party, the balance of equities and the public interest merge. *Drakes Bay Oyster Co. v. Jewell,* 747 F.3d 1073, 1092 (9th Cir. 2014). These factors favor the District. An injunction would place the District in the difficult position of complying with the Court's order while potentially running afoul of an Oregon law, which plaintiff has elected not to challenge, that places its state funding at risk.


VICKERS PLASS LLC
5200 SW MEADOWS ROAD, SUITE 150
LAKE OSWEGO, OREGON 97035
(503) 726-5985| (503) 726-5975

## CONCLUSION

For the reasons given above, the District requests that the Court deny plaintiff's motion for a preliminary injunction.

DATED: October 30, 2026.

VICKERS PLASS LLC

*s/ Karen M. Vickers*

**KAREN M. VICKERS,** OSB No. 913810
kvickers@vickersplass.com
503-726-5985
**BETH F. PLASS,** OSB No. 122031
bplass@vickersplass.com
503-726-5975
Of Attorneys for Defendants